Case No. 25–30541

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**Derek Brown; Julia Barecki-Brown**

Plaintiffs – Appellants

**v.**

**Derrick Burmaster; Shaun Ferguson; New Orleans City,**

Defendants – Appellees.

---

On Appeal from the United States District Court,
Eastern District of Louisiana,
Civil Action No. 22-cv-00847,
Honorable Eldon E. Fallon, Presiding

———————————————

### BRIEF OF THE APPELLANTS

———————————————

William Most (No. 36914)       Tarak Anada (No. 31598)
David Lanser (No. 37764)       Patrick Van Burkleo (No. 41471)
MOST & ASSOCIATES              JONES WALKER LLP
201 St. Charles Ave, Ste. 2500 #9685    201 St. Charles Ave.
New Orleans, LA 70170          New Orleans, LA 70170
Telephone: (504) 509-5023      Telephone: (504) 582-8322
williammost@gmail.com          tanada@joneswalker.com

*Counsel For Plaintiffs-Appellants*

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Derek Brown, Plaintiff-Appellant
2. Julia Barecki-Brown, Plaintiff-Appellant
3. William Most, Most & Associates, Counsel for Appellants
4. Hope Phelps, Most & Associates, Counsel for Appellants
5. David Lanser, Most & Associates, Counsel for Appellants
6. Tarak Anada, Jones Walker LLP, Counsel for Appellants
7. Patrick Van Burkleo, Jones Walker LLP, Counsel for Appellants
8. Derrick Burmaster, Appellee[1]
9. Donesia Turner, Counsel for Appellees
10. James Roquemore, Counsel for Appellees
11. Corwin St. Raymond, Counsel for Appellees

/s/ William Most
William Most
*Attorney of record for Plaintiffs-Appellants*

---

[1] The other individual appellee named in the caption, former NOPD Chief Shaun Ferguson, was dismissed from the case. *See* ROA.5947. Therefore, he does not constitute an interested party.

2

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument in this matter. Appellants believe oral argument would be helpful in assessing and questioning the legal and factual questions at issue on appeal.

In particular, oral argument would help elucidate the issues regarding (1) how the verdict form improperly included both steps of qualified immunity in violation of Fifth Circuit caselaw and two stipulated Pre-Trial Orders; and (2) how the trial court entered judgment for the City despite the jury's finding that the City "is liable" for the constitutional violation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... 2

STATEMENT REGARDING ORAL ARGUMENT ...........................................3

TABLE OF CONTENTS ................................................................................ 4

TABLE OF AUTHORITIES ........................................................................... 6

JURISDICTIONAL STATEMENT ..................................................................10

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................ 11

STATEMENT OF THE CASE .......................................................................12

    I.   Factual Background .........................................................................14

        A. In 2021, Officer Burmaster entered the Brown Family's property and shot and killed their sixteen-week-old puppy Apollo. ..........................................14

        B. NOPD investigated the shooting. Prior to the Browns filing suit, NOPD review bodies unanimously agreed the shooting was unjustified. ..................17

        C. The City of New Orleans copied its training from a federal curriculum – but cut out everything about the relatively minor risks of dogs and effective techniques for officers to handle them. .......................................................19

    II.   Procedural Background ..................................................................... 22

STANDARD OF REVIEW ...........................................................................27

SUMMARY OF THE ARGUMENT ............................................................... 28

THE ARGUMENT ........................................................................................29

I.    This Court should reform the judgment because the verdict form included the purely-legal second step of qualified immunity – in direct contravention of this Court's instructions in *Ramirez v. Killian*. ..................................................29

II.   This Court should reform the judgment because the verdict form included both steps of qualified immunity, even though the parties stipulated in writing that it would not. ...............................................................................................36

III.    This Court should reform the judgment because the jury found that the "City of New Orleans is liable" – but the trial court nonetheless entered judgment for the City ..............................................................................................38

CONCLUSION ...........................................................................................41

CERTIFICATE OF SERVICE ....................................................................43

CERTIFICATE OF COMPLIANCE ........................................................... 44

# TABLE OF AUTHORITIES

## CASES

*Acevedo-Garcia v. Monroig*,
351 F.3d 547 (1st Cir. 2003)................................................................32

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*,
369 US 355 (1964) .....................................................................28, 40

*Branch-Hines v. Hebert*,
939 F.2d 1311 (5th Cir. 1991) ...........................................................37

*Brown v. Burmaster*,
2025 U.S. App. LEXIS 1129 (5th Cir. 2025)....................................passim

*Cantu v. Tamez*,
No. 23-40673, 2024 U.S. App. LEXIS 22630 (5th Cir. 2024)................30

*Carr v. Wal-Mart Stores, Inc.*,
312 F. 3d 667 (5th Cir. 2002)......................................................... 40

*Cole v. Carson*,
935 F.3d 444 (5th Cir. 2019)..................................................... 30, 31

*Cortez v. McCauley*,
478 F.3d 1108 (10th Cir. 2007)........................................................32

*Covington v. City of Madisonville*,
812 F. App'x 219 (5th Cir. 2020).....................................................39

*Curley v. Klem*,
499 F.3d 199 (3d Cir. 2007)...................................................... 31, 32

*Ducksworth v. Landrum*,
62 F.4th 209 (5th Cir. 2023) ......................................................... 24

*Excel Modular Scaffold & Leasing Co. v. OSHRC*,
943 F.3d 748 (5th Cir. 2019)...........................................................37

*Gallick v. B & O R.R.*,
372 U.S. 108, 83 S. Ct. 659 (1963) ................................................................ 29, 41

*Gomez v. Galman*,
No. 24-30207, 2025 U.S. App. LEXIS 8786 (5th Cir. Apr. 14, 2025) ................... 33

*Gonzales v. Duran*,
590 F.3d 855 (10th Cir. 2009) ..................................................................... 31, 33

*Gros v. City of Grand Prairie*,
181 F.3d 613 (5th Cir. 1999) ............................................................................. 31

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ....................................................................................... 30

*James v. Harris County*,
577 F.3d 612 (5th Cir. 2009) ............................................................................ 39

*Johnson v. Breeden*,
280 F.3d 1308 (11th Cir. 2002) ................................................................... 32, 33

*Johnston v. Tidewater Marine Serv.*,
No. 96-30595, 1997 U.S. App. LEXIS 42798 (5th Cir. Apr. 23, 1997) ................. 28

*Kerman v. City of New York*,
374 F.3d 93 (2d Cir. 2004) .............................................................................. 32

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
225 F.3d 595 (5th Cir. 2000) ........................................................................... 37

*Littrell v. Franklin*,
388 F.3d 578 (8th Cir. 2004) ...................................................................... 31, 32

*Loumar, Inc. v. Smith*,
698 F.2d 759 (5th Cir. 1983) ........................................................................... 36

*McCoy v. Hernandez*,
203 F.3d 371 (5th Cir. 2000) ...................................................................... 32, 33

*McInnis v. A.M.F., Inc.,*
765 F.2d 240 (1st Cir. 1985) ...................................................................39

*Morales v. Fry*,
873 F. 3d 817 (9th Cir. 2017) ................................................................31

*Pitt v. Dist. of Columbia*,
491 F.3d 494 (D.C. Cir. 2007) ...............................................................31

*Pouillon v. City of Owosso*,
206 F.3d 711 (6th Cir. 2000) .......................................................... 32, 36

*Ramirez v. Killian*,
113 F. 4th 415 (5th Cir. 2024) .....................................................passim

*Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*,
610 F.3d 249 (5th Cir. 2010) .................................................................37

*Siegert v. Gilley*,
500 US 226 (1991) ..................................................................................31

*Simmons v. Bradshaw*,
879 F.3d 1157 (11th Cir. 2018) ............................................................33

*Standard Fire Ins. Co. v. Knowles*,
568 US 588 (2013) ..................................................................................38

*Tamez v. City of San Marcos*,
118 F.3d 1085 (5th Cir. 1997) ...............................................................33

*Taylor v. LeBlanc*,
60 F. 4th 246 (5th Cir. 2023) .................................................................31

*United States v. Bowen*,
799 F.3d 336 (5th Cir. 2015) ................................................................ 28

*United States v. Johnson*,
718 F.2d 1317 (5th Cir. 1983) ...............................................................33

8

*United States v. Pratt,*
807 F.3d 641 (5th Cir. 2015) ............................................................. 28

*Warlick v. Cross,*
969 F.2d 303 (7th Cir. 1992) .............................................................32

*Willingham v. Crooke,*
412 F.3d 553 (4th Cir. 2005) ............................................................. 31

## STATUTES

28 U.S.C. § 1291 ............................................................................ 11

28 U.S.C. § 1367(a) ........................................................................ 11

42 U.S.C. § 1983 ............................................................................ 11

## RULES

Fed. R. App. 4(a)(4)(A)(v)................................................................10

Fed. R. Civ. Pro. 59(b) ...................................................................10

Fed. R. Civ. Proc. Rule 49(b)(4)........................................................ 41

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it is a suit brought under 42 U.S.C. § 1983. It had jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because Plaintiff is appealing a final decision of a district court of the United States. *See* ROA.5739 (Judgment), ROA.5895 (Order Denying Motion for New Trial). The following dates are relevant to the timeliness of this appeal:

- On June 12, 2025, the trial in this matter ended. ROA.5640.

- On July 8, 2025, the trial court issued a judgment. ROA.5739.

- On July 30, 2025, Plaintiffs filed a motion to amend the judgment or order a limited new trial. ROA.5741.

- On August 28, 2025, the trial court denied Plaintiff's motion. ROA.5895.

- On September 22, 2025, Plaintiff filed a notice of appeal. ROA.5915.

As these dates show, Plaintiffs filed their motion for a new trial within twenty-eight days of the judgment, making it timely per Fed. R. Civ. Pro. 59(b). And Plaintiffs filed their notice of appeal within thirty days of the denial of the motion, making their appeal timely per Fed. R. App. 4(a)(4)(A)(v).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Should the jury verdict be reformed given that it improperly included the purely-legal second step of qualified immunity in contravention of *Ramirez v. Killian*, 113 F. 4th 415, 430 (5th Cir. 2024)?

2.      Should the jury verdict be reformed given that it made both steps of qualified immunity a jury question, even though the parties stipulated that it would not?

3.      Should the judgment be amended or a new trial ordered given that the jury found that the "City of New Orleans is liable" but the trial court entered judgment against Plaintiffs?

## STATEMENT OF THE CASE

This case involves a New Orleans Police Department officer, Defendant Derrick Burmaster, who encountered Plaintiffs' dog Apollo during a call for service. Apollo was a sixteen-week-old puppy who was the size of a large cat. He was so young that he had not developed the ability to bark.

When Burmaster entered the Plaintiffs' yard, Apollo ran towards him wagging his tail. Burmaster testified that he was afraid of the puppy. Burmaster declined to use any non-lethal methods available to him, like using his TASER, using his police boots to kick the puppy away, or doing what the other officer present did – just leaving the yard through the gate. Instead, Burmaster fired three rounds from his gun. Shrapnel hit and wounded the other officer. The gunfire hit and was fatal to Apollo. The puppy died in his owner's arms.

Apollo's owners brought constitutional and state-law claims against Burmaster and the City of New Orleans. Before trial, Burmaster invoked qualified immunity at summary judgment. The trial court denied the motion. On an interlocutory appeal, this Court affirmed that "the district court did not err in denying Burmaster qualified immunity."[2]

---

[2] *Brown v. Burmaster,* 2025 U.S. App. LEXIS 1129 at *1 (5th Cir. 2025) (*per curiam, unpublished*).

At trial, the Plaintiffs put on evidence of Burmaster's misconduct, as well as the City's responsibility. In particular, the Plaintiffs showed how the City (through the NOPD) copied and pasted training materials from a federal curriculum – but cut out almost everything indicating that dogs are not as dangerous as officers may think. Specifically, NOPD cut out the statements like "an approaching dog is almost always friendly" and that TASER darts have been nearly 100% effective at causing dogs to flee when struck.

The jury verdict form had problems, however. Over plaintiff's objection and in direct violation of this Court's instructions in *Ramirez v. Killian,* the trial court placed the qualified immunity question on the verdict form – even though both the trial court and the court of appeal had denied qualified immunity at the summary judgment phase.

The verdict form also allowed the jury to reach a confusing result regarding the City's liability. The jury determined that the City was "liable for a violation of [Plaintiffs'] constitutional rights" but also that the City's policies had not caused the killing. There cannot be liability without causation, and so the best reading of the jury's verdict is that the City was liable because of the *absence* of appropriate policies. But even though the jury found the City liable, the trial court entered judgment for the City and against Plaintiffs.

13

Accordingly, this Court's intervention is needed to bring the judgment below into harmony with the law and the verdict form.

I.   Factual Background

**A.   In 2021, Officer Burmaster entered the Brown Family's property and shot and killed their sixteen-week-old puppy Apollo.**

In April of 2021, the Brown family had two dogs: Apollo, a sixteen-week-old, 22-pound puppy who stood only eighteen inches tall, and Bucho, a larger adult dog.[3] This was Apollo:[4]

 

---

[3] ROA.1071 (autopsy report); *Brown v. Burmaster, supra*, at *1.
[4] These photos were taken in the weeks before Apollo's death. NOPD Officer John Roussel testified that the picture on the left was consistent with the way Apollo looked on the night of Apollo's death. ROA.1621-22. The picture on the right is provided with a water bowl for scale.

In the evening of April 10, 2021, Plaintiffs Derek Brown and Julia Barecki-Brown got into a verbal argument at their home in New Orleans. A neighbor called the police and Defendant NOPD Officer Burmaster responded.[5]

Another NOPD officer, John Roussel, joined Burmaster on scene.[6] They walked to the Brown's home and entered the front courtyard through one of two gates. A dog began to bark. Before Burmaster saw any dogs, he drew his firearm.[7]

Officer Roussel, who was "standing right next to" Burmaster, tapped Burmaster on the shoulder to indicate that they should leave the yard.[8] Roussel left out of the pedestrian gate they had come in through. He held the gate open for Burmaster because Burmaster was "close enough to also come out."[9]

Burmaster chose not to exit with Roussel or through the vehicle gate that was right behind him.[10] Instead, he stood in place. The two dogs, Bucho and Apollo, came down the stairs leading from the porch to the courtyard.[11] Upon reaching the courtyard, the larger dog, Bucho, ran away from Burmaster.[12] The smaller dog,

---

[5] ROA.1196 (Burmaster Body Worn Camera Footage ("BWC") at 00:01.); *Brown v. Burmaster,* 2025 U.S. App. LEXIS 1129 at *1 (5th Cir. 2025) (*per curiam, unpublished*).

[6] *Brown v. Burmaster, supra,* at *2.

[7] ROA.3014 ("Without sight of the dogs, Officer Burmaster removed his weapon from the holster."); *Brown v. Burmaster, supra,* at *2.

[8] ROA.2675, 2704 (Roussel Dep.); *Brown v. Burmaster, supra,* at *2.

[9] ROA.2677 (Roussel Dep.); *Brown v. Burmaster, supra,* at *2.

[10] Burmaster BWC, ROA.1196, at 1:34, 1:52; *Brown v. Burmaster, supra,* at *2.

[11] ROA.1196 at 1:54; *Brown v. Burmaster, supra,* at *2.

[12] ROA.1196 at 1:56; *Brown v. Burmaster, supra,* at *2.

Apollo, ran towards Burmaster, wagging his tail.[13]

At the time, Officer Burmaster was armed with a firearm and a TASER. According to NOPD experts, a TASER would have been an effective non-lethal tool for Burmaster to have used if he feared that the puppy would harm him.[14] Burmaster did not use the TASER. Nor did he use his boots to kick Apollo away, as Defendants' experts agreed he could have.[15] Instead, Burmaster fired his gun three times at Apollo, killing the puppy.[16]

Burmaster shot and killed Apollo, even though Apollo did not bark, growl, vocalize, jump, bare his teeth, or lunge.[17] Nor could Apollo: at sixteen weeks old, the dog was so young that he had not yet even developed the ability to bark.[18] According to the NOPD's internal investigation, Apollo "did not attack or attempt to attack Officer Burmaster."[19]

So why did Officer Burmaster shoot a small puppy that was not attacking him? Officer Burmaster's explanation was that he was worried that Apollo was going to

---

[13] ROA.1196 at 1:56; *Brown v. Burmaster, supra,* at *2.
[14] ROA.3025 (Brewer Dep.); ROA.3063 (Goodly Dep.).
[15] *See* ROA.2952-53 (Roussel Dep.); ROA.1502 (Duplantier, one of Burmaster's designated experts, testified that a viable alternative would have been to "kick at the dog.").
[16] ROA.3009, ROA.3013-3015; *Brown v. Burmaster, supra,* at *2.
[17] ROA.1196 (BWC Video); ROA.1651-1652 (Roussel Dep.); *Brown v. Burmaster, supra,* at *2.
[18] ROA.2992 (Brown Dep.).
[19] ROA.3014.

bite his penis.[20] At deposition and trial, Burmaster conceded that Apollo was not tall enough to reach his penis.[21] But Burmaster said that he was afraid of the possibility that Apollo might jump into the air, and that the puppy's "landing spot" after flying through the air might be Burmaster's penis.[22] Fear of a penis-biting dog was also Officer Burmaster's explanation the *previous* time he shot and killed a dog while on duty.[23]

As Burmaster fired his gun, ricochet shrapnel struck the other officer's forearm, requiring the officer to obtain immediate medical treatment.[24] After hearing the gunshots, Derek and Julia Brown ran out of their house into the courtyard to find that Apollo had been shot.[25] Apollo died in Derek Brown's arms.[26]

**B.      NOPD investigated the shooting. Prior to the Browns filing suit, NOPD review bodies unanimously agreed the shooting was unjustified.**

Prior to the Browns filing suit, NOPD referred the shooting to two separate internal investigative bodies: the Public Integrity Bureau ("PIB") and the Use of Force Review Board.

---

[20] ROA.2882; *see also* ROA.3007 ("Officer Burmaster stated he was concerned the dog was going to bite his penis.").

[21] ROA.2177.

[22] ROA.2178.

[23] *See* ROA.3001-3002 (describing how Burmaster "grabbed his crotch" as he fired his weapon at a dog).

[24] ROA.3000; ROA.2868 at ¶ 26.

[25] ROA.2868 at ¶ 27.

[26] ROA.2868 at ¶ 27.

NOPD Detective Brewer, who led the PIB Force Investigative Team's Administrative Shooting Investigation of Burmaster, concluded that Apollo "did not present an imminent threat toward Officer Burmaster."[27] She concluded that the shooting was "unjustified."[28] The other two members of the NOPD's PIB Force Investigative Team, Sergeant Helou and Captain Richardson, unanimously concurred.[29]

The NOPD's Use of Force Review Board also independently investigated Burmaster's shooting of Apollo. The Use of Force Review Board, comprised of Deputy Superintendent Goodly, Deputy Superintendent Noel, and Deputy Superintendent Westbrook, unanimously ruled that Burmaster's shooting of Apollo was "NOT JUSTIFIED."[30]

In issuing its ruling, the Use of Force Review Board found that Burmaster (1) "had a false perception of a threat that was not there," (2) "did not articulate any threat towards him," (3) was not faced with any "attack," and (4) "the smaller dog posed no threat." The Use of Force Review Board further recommended that Burmaster receive "De-escalation training," and said he needed it "ASAP."[31]

---

[27] ROA.3013.
[28] ROA.3040-41.
[29] ROA.3017.
[30] ROA.3128
[31] ROA.3128.

But after the lawsuit was filed in 2022, NOPD reversed course. At a meeting called the "Chief's Hearing," a panel of three ranking officers recommended to the Chief of Police that Burmaster be "EXONERATED" of the use of force violation.[32] The Chief adopted that recommendation.[33]

A chart showing NOPD's about-face is as follows:

| Aug. 2021 PIB | Aug 2021 Use of Force Review Board | 2022 Lawsuit Filed | Sep. 2023 Chief's Hearing | Oct. 2023 Chief's Decision |
|---|---|---|---|---|
| Unjustified | Unjustified | | Exonerated | Exonerated |
| Unjustified | Unjustified | | Exonerated | |
| Unjustified | Unjustified | | Exonerated | |

### C. The City of New Orleans copied its training from a federal curriculum – but cut out everything about the relatively minor risks of dogs and effective techniques for officers to handle them.

At trial, Plaintiff put on evidence that the City had improperly and insufficiently trained Officer Burmaster to deal with dog interactions. First, Burmaster's academy training from when he became an officer in 2000 was so insufficient that Burmaster testified that he was "instructed to forget all training

---

[32] ROA.3859.
[33] ROA.3872-3873.

from that era."[34] Seventeen years later, the City said that it provided Burmaster with some additional training regarding dogs – but the City could not produce the training or describe its contents in any way,[35] and Burmaster had no recollection of it.

Then, in 2019, the City provided Burmaster with some additional training consisting of a set of slides entitled "The Problem of Dog-Related Incidents and Encounters." These materials were largely copied-and-pasted from a U.S. Department of Justice's COPS curriculum with the same title.[36] But the 2019 training omitted key elements of the COPS training. For example, the City omitted the fact that "serious [dog] bites are relatively rare" and that the "overwhelming majority of dog bites are minor, causing either no injury at all or injuries so minor that no medical care is required."[37]

The COPS training noted that "[f]ewer than 2 percent of the individuals visiting an emergency room complaining of a dog bite require hospitalization," compared to 5.7 percent for people assaulted by a human.[38] It pointed out that "even as the canine population has steadily increased over the past three decades, the

---

[34] ROA.2182 (Burmaster Dep.) at 182:6-11 ("Q. Do you recall the content of that training? A. From the academy? Q. Uh-huh (indicating affirmatively). A. Oh, we were instructed to forget all training from that era.")

[35] ROA.4429 (the City's 30(b)(6) witness conceded that the City does not "know anything about the contents of these videos.")

[36] Compare ROA.358-369 (NOPD Training) with ROA.370-421 (COPS Training).

[37] ROA.380 (COPS Training).

[38] *Id.*

number of reported dog bites has drastically decreased."[39] The COPS training included – and the City cut out – a video of "a real-time example of a safe, effective use of the Taser®—which ensures the safety of the officers, bystanders, and dogs."[40] The City training also removed the fact that all dogs hit with TASER darts but not immobilized "fled the scene and did not attack."[41]

And directly on point to the case here, the COPS training notes that a factor contributing to dog-related incidents is "Insufficiently Trained Police Officers" who "view a dog running toward them as a threat (the dog could be friendly and merely greeting the officer)."[42] The COPS training specifically noted that:

> An approaching dog: Most dogs happily greet a new human. Some will be so enthusiastic about greeting that they will do this at a full run and then launch themselves at the officer. Absent any of the warning signals described below, an approaching dog is almost always friendly. A dog who feels threatened will usually try to keep his distance.[43]

But NOPD omitted all that. Accordingly, Burmaster was not trained by NOPD that an approaching dog is almost always friendly – a fact that could have saved Apollo's life and prevented Burmaster from wounding another officer with gunfire.

---

[39] ROA.381.
[40] ROA.385.
[41] ROA.406 (COPS Training).
[42] ROA.384.
[43] ROA.394 (emphasis added).

II.    Procedural Background

On March 31, 2022, Plaintiffs filed suit, bringing Section 1983 and state-law tort claims against Burmaster and the City.[44]

On March 21, 2023, the trial court denied the City's motion to dismiss, concluding that the complaint had sufficiently alleged issues related to the City's training and "the inappropriateness of NOPD's choice to continue having Burmaster on the force" despite his history of misconduct.[45]

Discovery proceeded. At times, discovery was complicated by the fact that the City had failed to pay its document storage vendor, resulting in the City having to subpoena and seek contempt sanctions against its vendor to obtain the City's own police records.[46]

Trial was scheduled for April 2023. In proffering a proposed pre-trial order to the trial court, the parties stipulated that "This is a jury case. The jury shall decide all disputed factual issues other than qualified immunity."[47]

Fifteen days before trial, Burmaster filed his first motion invoking qualified immunity, a motion for summary judgment.[48] Five days before trial, the trial court

---

[44] ROA.29.
[45] ROA.1848 *et seq.*
[46] ROA.268 *et seq.*
[47] ROA.1127.
[48] ROA.1156.

denied Burmaster's motion.[49] That same day, Burmaster filed a notice of appeal.[50] The appeal was delayed while Burmaster pursued a bankruptcy proceeding.[51]

The stay pending bankruptcy proceedings was lifted, and on January 17, 2025, a panel of this Court ruled on Burmaster's interlocutory appeal. The Court noted that "[w]here the district court determines that genuine issues of material fact preclude a determination of qualified immunity," the court of appeal has "jurisdiction only to address the legal question of whether the genuinely disputed factual issues are material for the purposes of summary judgment."[52] Given that the trial court had found genuinely disputed facts and Burmaster had conceded the materiality of those facts, the Court of Appeal concluded that it lacked jurisdiction and dismissed the appeal.[53]

The appeals court also confirmed that the trial court was correct to deny qualified immunity at the summary judgment phase. The appeals court noted that in *Ramirez v. Killian*, 113 F.4th 415 (5th Cir. 2024), the Fifth Circuit held that "by June 2016 it was clearly established that 'an officer may not, consistent with the Fourth Amendment, kill a pet dog unless he reasonably believes that the dog poses a threat

---

[49] ROA.3709 *et seq.*
[50] ROA.3725.
[51] ROA.3736.
[52] *Brown v. Burmaster*, supra, at *4, *quoting Ducksworth v. Landrum*, 62 F.4th 209, 212 (5th Cir. 2023).
[53] *Brown v. Burmaster*, supra, at *9.

23

and that he is in imminent danger of being attacked.'"[54] Given that legal background,

the appeals court held that:

> Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could conclude that Burmaster did not reasonably believe that Bruno, a small puppy who was wagging his tail shortly before the shooting, posed a threat. A reasonable jury could further conclude that Burmaster did not reasonably believe he was in imminent danger, based on Bruno's size, Burmaster's ability to exit the yard, and the availability of non-lethal tools like the taser and police boots.[55]

Accordingly, the court of appeal ruled that "the district court did not err in

denying Burmaster qualified immunity."[56]

Thereafter, the case proceeded again towards trial. The parties stipulated

again that the "jury shall decide all disputed factual issues other than qualified

immunity."[57]

On June 2, 2025, the trial court denied the parties' second round of cross-

motions for summary judgment.[58] After that, Defendants reversed course about

qualified immunity. Although both the trial court and the court of appeal had denied

qualified immunity to Burmaster at the summary judgment phase, and despite the

fact that the parties had *twice* stipulated that the jury would not decide the legal issue

---

[54] *Id.* at 8.

[55] *Id.* The references to "Bruno" are an error. Bruno was the dog in *Ramirez v. Killian.*

[56] *Id.*

[57] ROA.4977.

[58] ROA.5314 *et seq.*

of qualified immunity, Defendants sought a jury instruction regarding qualified immunity.[59] Plaintiffs filed a motion to strike the jury instruction regarding qualified immunity, citing the Fifth Circuit's decision in *Killian* that when "a plaintiff's claim survives the defendant's qualified immunity defense at summary judgment and proceeds to trial, there has already been, necessarily, a judicial determination as to the second qualified immunity step."[60] At the trial court's request, Plaintiffs filed a letter brief explaining further.[61]

Trial began on June 9, 2025 and concluded on June 12, 2025.[62] Over Plaintiffs' objection, the trial court placed the qualified immunity question on the verdict form.[63]

At the conclusion of trial, the jury issued a mixed verdict. It found that Burmaster had "acted in an objectively unreasonable manner by killing Apollo" and that the killing damaged the Plaintiffs.[64] But the jury also found that Burmaster was "entitled to qualified immunity."[65]

---

[59] ROA.5267 (Defendants' Proposed Jury Instructions).
[60] ROA.5533 *et seq.*
[61] ROA.5537.
[62] ROA.5644 (Verdict Form).
[63] *Id.*
[64] *Id.*
[65] *Id.*

The jury also concluded that the City was "*liable* for a violation of [Plaintiffs'] constitutional rights" by inadequately training, supervising, or disciplining Burmaster with respect to the use of force on dogs.[66] But confusingly, the jury decided that this liability for a violation of constitutional rights did not cause the killing of Apollo.[67]

The jury also found in Plaintiffs' favor on the state-law claims of negligence, negligent infliction of emotional distress, and the intentional tort of conversion given that "Burmaster wrongfully killed Apollo."[68] The jury awarded $10,400 in damages.[69]

A few days after the trial was complete, the trial court denied "Plaintiffs' Motion to Strike Defendants' Request to Have the Jury Decide Qualified Immunity."[70] On June 21, 2025, the Plaintiffs filed a motion for the trial court to "reconsider its inclusion of both steps of qualified immunity on the jury verdict form, and its double, inconsistent counting of municipal causation."[71] The trial court

---

[66] *Id.* at 2.
[67] *Id.*
[68] *Id.* at 2-3.
[69] *Id.* at 3.
[70] ROA.5638.
[71] ROA.5658 *et seq.*

denied the motion as moot given that judgment had not yet issued, but allowed the Plaintiffs to re-raise the issues once the judgment was rendered.[72]

After the judgment issued, Plaintiffs re-raised the issues, asking the trial court to amend the judgment or order a limited new trial for two reasons: because (1) the verdict form improperly included both steps of qualified immunity in contravention of Fifth Circuit caselaw and the stipulated Pre-Trial Order; and (2) the trial court entered judgment for the City even though the jury found the City "liable."[73] On August 28, 2025, the trial court denied the motion.[74]

Thereafter, the Plaintiffs and the City both filed notices of appeal.[75] The Court of Appeal docketed the matter as two separate appeals: *Brown v. Burmaster* (25-30541) for the Plaintiffs' appeal, and *Brown v. City of New Orleans* (25-30543) for the City's appeal. The City ultimately withdrew its appeal.

## STANDARD OF REVIEW

In reviewing a district court's order denying a motion for a new trial, this Court applies a standard by which it reviews questions of law under a *de novo* standard and upholds the district findings of fact unless they are "clearly erroneous." *United*

---

[72] ROA.5738.
[73] ROA.5742 *et seq.*
[74] ROA.5895 *et seq.*
[75] ROA.5915-5916.

*States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015), *citing United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015).

In reviewing a jury verdict form, courts must take a "view of the case that makes the jury's answers to special interrogatories consistent."[76] It is the "duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them."[77] Courts must "attempt to reconcile the jury's findings, by exegesis if necessary."[78]

## SUMMARY OF THE ARGUMENT

The trial court erred in three ways. First, it erred when it put both steps of qualified immunity to the jury – both the factual first step and the "purely legal" second step. In *Ramirez v. Killian*, 113 F. 4th 415, 430 (5th Cir. 2024), this Court held that the second step should not be put to the jury in cases like this one where qualified immunity was invoked and denied at summary judgment.

Second, the trial court erred when it put qualified immunity to the jury even though the parties stipulated in two pre-trial orders that qualified immunity would *not* be put to the jury.

---

[76] *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 US 355, 364 (1964). *See also Johnston v. Tidewater Marine Serv.*, No. 96-30595, 1997 U.S. App. LEXIS 42798, at *2 (5th Cir. Apr. 23, 1997) ("We are required under the Seventh Amendment to make a concerted effort to reconcile seemingly inconsistent answers to special interrogatories if possible.") .
[77] *Gallick v. B & O R.R.*, 372 U.S. 108, 119, 83 S. Ct. 659, 666 (1963).
[78] *Id.*

And third, the trial court erred when it entered judgment for the City of New Orleans even though the jury found that Plaintiffs proved "by a preponderance of the evidence that Defendant the City of New Orleans is liable for a violation of their constitutional rights."

## **THE ARGUMENT**

I.    <u>This Court should reform the judgment because the verdict form included the purely-legal second step of qualified immunity – in direct contravention of this Court's instructions in *Ramirez v. Killian*.</u>

The trial court erred in putting the entire qualified immunity question to the jury, given that the trial court and the court of appeal had addressed the issue at the summary judgment phase.

To understand why, it is worth revisiting what qualified immunity is. Qualified immunity is available to government official defendants when a plaintiff alleges that the official violated their Constitutional rights in a damages suit.[79] The "qualified-immunity inquiry has two steps.  First, we ask whether 'the officer's conduct violated a federal right.'  Second, we ask 'whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his [] conduct.'"[80]

---

[79] *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).
[80] *Cantu v. Tamez*, No. 23-40673, 2024 U.S. App. LEXIS 22630, at *4 (5th Cir. 2024) (citations omitted).

29

In a Fourth Amendment context, the first step of qualified immunity is <u>factual</u> and asks whether the constitution was violated "by conduct that, viewed from the officer's perspective and information at the time, is objectively unreasonable."[81]

The second step, by contrast, is <u>legal:</u> it "assesses the objective <u>legal</u> reasonableness of the action, that is, whether every reasonable officer would have known that the conduct in question was illegal."[82] According to the Supreme Court and this Court, the second step is a "purely legal question."[83]

Given that factual questions are typically for juries and legal questions reserved for judges,[84] <u>every</u> circuit court of appeal has agreed that the second, "purely legal" step of qualified immunity should generally not be decided by a jury.[85]

---

[81] *Cole v. Carson*, 935 F.3d 444, 462 (5th Cir. 2019).

[82] *Id.* (emphasis added).

[83] *Siegert v. Gilley*, 500 US 226, 232 (1991) (describing the second step as a "purely legal question"); *Ramirez v. Killian*, 113 F. 4th 415, 430 (5th Cir. 2024) (describing the "second step" as a "purely legal question"); *Taylor v. LeBlanc*, 60 F. 4th 246, 251 (5th Cir. 2023) (whether "a given course of conduct would be objectively unreasonable in light of clearly established law" is a "purely legal question"); *Cole v. Carson*, 935 F.3d 444, 462 (5th Cir. 2019) ("The second step assesses the objective legal reasonableness of the action").

[84] *See, e.g., Gros v. City of Grand Prairie*, 181 F.3d 613, 617 (5th Cir. 1999) ("[W]hether an official has been delegated final policymaking authority is a question of law for the judge, not [one] of fact for the jury.").

[85] *Morales v. Fry*, 873 F. 3d 817, 824 (9th Cir. 2017) (collecting cases: "The First, Second, Third, Fourth, Sixth, Seventh, Eighth, Eleventh, and D.C. Circuits take the view that whether a right is clearly established is a legal issue for the judge to decide, although special interrogatories to the jury can be used to establish disputed material facts" . . . [t]he Tenth Circuit also considers this the 'better approach'"), *citing Gonzales v. Duran*, 590 F.3d 855, 860 (10th Cir. 2009) ("Letting the jury determine whether the officer's actions were reasonable in light of the clearly established law has the potential of asking the jury to resolve a legal question. . . the better approach is for the court to submit special interrogatories to the jury to establish the facts."), *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007) ("We therefore take the opportunity to reiterate and clarify a central

Of those courts of appeal, all but two hold that qualified immunity should categorically not be submitted to the jury. The Third Circuit, for example, holds that a district court that submits the clearly established inquiry to the jury commits "reversible error."[86] The Seventh Circuit holds that qualified immunity is a "question of law for the court, not a jury question" and so when "the issue of qualified immunity remains unresolved at the time of trial . . . the district court may

---

message from that case: whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury."), *Pitt v. Dist. of Columbia*, 491 F.3d 494, 509-10 (D.C. Cir. 2007) ("whether a right is "clearly established" - that is, whether an objectively reasonable officer would have believed his conduct to be lawful, in light of clearly established law - is a question of law that must be resolved by the court, not the jury."); *Willingham v. Crooke,* 412 F.3d 553, 560 (4th Cir. 2005) ("we hold that HN5 the legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the court, not by the jury."); *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004) ("The law of our circuit is clear. The issue of qualified immunity is a question of law for the court, rather than the jury, to decide"); *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) ("After receiving 'the jury['s] . . . decision as to 'what the facts were that the officer faced or perceived,' the court then may 'make the ultimate legal determination of whether qualified immunity attaches on those facts.'"); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 563 (1st Cir. 2003) ("The availability of qualified immunity after a trial is a legal question informed by the jury's findings of fact, but ultimately committed to the court's judgment."); *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) ("When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty"), *Pouillon v. City of Owosso*, 206 F.3d 711, 718 (6th Cir. 2000) ("the question of qualified immunity, which was improperly submitted to the jury under general instructions, is rather a question of law for determination by the judge."); *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992) ("The question of a defendant's qualified immunity is a question of law for the court, not a jury question."); *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) ("qualified immunity ordinarily should be decided by the court long before trial"). *See also Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (en banc) (holding that there "is no such thing as a genuine issue of fact as to whether an officer should have known that his conduct violated constitutional rights…The conduct was either objectively reasonable under existing law or it was not.");
[86] *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007).

properly use special interrogatories to allow the jury to determine disputed issues of fact upon which the court can base its legal determination of qualified immunity."[87] The Eighth Circuit holds that it "is error . . . to submit the ultimate question of qualified immunity to the jury."[88] The Eleventh Circuit holds that "[q]ualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term."[89]

The Fifth and Tenth Circuits are outliers, however, in that they have allowed qualified immunity to *sometimes* go to the jury in *limited, exceptional* circumstances.[90]

---

[87] *Warlick v. Cross*, 969 F. 2d 303, 305-306 (7th Cir. 1992).

[88] *Littrell v. Franklin,* 388 F.3d 578, 586 (8th Cir. 2004).

[89] *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002). *See also Simmons v. Bradshaw*, 879 F.3d 1157, 1165-67 (11th Cir. 2018) (finding error of law when the district court instructs the jury on both the merits of excessive force and the question of whether it was clear to a reasonable officer that force was excessive.  The court should have submitted only "contested factual issues to the jury" since "it is not the province of the jury to decide a defendant's entitlement to qualified immunity.").

[90] *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) ("we have previously held that while qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct"); *Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009) (noting that the jury may decide qualified immunity in some "exceptional circumstances" where historical facts are "so intertwined with the law that a jury question is appropriate."). But even this Court has traditionally expressed deep skepticism about allowing the jury to decide legal questions. *See Tamez v. City of San Marcos*, 118 F.3d 1085, 1094 (5th Cir. 1997) ("However, the court erroneously instructed the jury to answer both the factual question and the legal question. . . . Although the question of whether certain conditions were present is surely a question for the jury, the legal question of whether those circumstances justified Misiaszek's actions is a legal question that should have been determined by the court."); *Gomez v. Galman*, No. 24-30207, 2025 U.S. App. LEXIS 8786, at *13 (5th Cir. Apr. 14, 2025) ("the district court erred in submitting to factfinders the question whether a duty exists as a matter of law."); *United States v. Johnson*, 718 F.2d 1317, 1333-34 (5th Cir. 1983) ("That the determination may be difficult is insufficient to permit a judge to pass a legal question to a jury.").

(It has never been clear, however, how that is to actually occur. Are lawyers supposed to put cases into evidence or read them to the jury to prove the clearly-established law? There is little guidance.)

Fortunately, this Court last year provided guidance about the limited circumstances in which a jury can decide qualified immunity, and when it cannot. In *Ramirez v. Killian*, the Fifth Circuit held that when "a plaintiff's claim survives the defendant's qualified immunity defense at summary judgment and proceeds to trial, there has already been, necessarily, a judicial determination as to the second qualified immunity step."[91] In another words, when qualified immunity is denied at the summary judgment phase, the "trial court has held that, assuming that the plaintiff's version of the facts is true, the defendant would not be entitled to qualified immunity."[92] For that reason, the "question at trial is then solely one of fact. The jury requires no additional 'reasonable officer evidence' to deny qualified immunity."[93]

This Court in *Killian* therefore set out the boundaries for what a jury may and may not decide once qualified immunity has been addressed on summary judgment.

---

[91] 113 F. 4th 415, 430 (5th Cir. 2024).
[92] *Id.*
[93] *Id.*

33

In such a situation, the "jury decides the *factual* question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis. It does not decide the purely *legal* question of whether the officer's actions were objectively reasonable in light of clearly established law—the second step."[94]

What *Killian* described is precisely the situation in this case: Plaintiffs' claims survived Defendant Burmaster's qualified immunity defense at the summary judgment phase both in the district court[95] and at the Court of Appeal.[96] A panel of this Court specifically held that "the district court did not err in denying Burmaster qualified immunity."[97] In a sense, this is a double-strength *Killian* scenario. In *Killian*, the trial court denied qualified immunity at summary judgment before trial, and that was enough to forbid the question from being put to the jury. Here, the trial court <u>and</u> the court of appeal <u>both</u> denied qualified immunity at summary judgment before trial, on the reasoning that if Plaintiffs' framing of the facts were accepted, it would violate clearly established law.[98]

---

[94] *Id.* at 429.

[95] ROA.3709 *et seq.*

[96] *Brown v. Burmaster*, 2025 U.S. App. LEXIS 1129 (5th Cir. Jan. 17, 2025).

[97] *Id.*

[98] *Id.* ("And, particularly in light of Ramirez, a reasonable jury could ultimately find that Burmaster 'seized' Bruno in violation of clearly established law. For that reason, even if Burmaster had not conceded materiality, the factual dispute is material and Burmaster would not be entitled to qualified immunity.").

For that reason, it was proper of the trial court to include Question 1 of the verdict form, which asked the first part of qualified immunity: whether "Derrick Burmaster acted in an objectively unreasonable manner by killing Apollo on April 10, 2021?"[99] But it was error for the trial court to then go on to ask the jury in Question 3 to complete the qualified immunity analysis, including the "purely legal" portion.[100]

Thus, in asking the jury to decide the entirety of qualified immunity, the trial court asked this jury to decide a legal question that the jury "does not decide."[101] And worse, the trial court asked the jury to decide a legal question – the clearly-established law prong of qualified immunity – that had already been decided by the Court of Appeal. In doing so, the trial court plausibly violated the law-of-the-case doctrine.[102]

The Court need not change the law of qualified immunity in any way to resolve this appeal – it need only apply *Killian* and find that the trial court erred in putting both steps of qualified immunity to the jury after the issue had been addressed at

---

[99] ROA.5644.

[100] *Id.* (Asking the jury whether "Derrick Burmaster [is] entitled to qualified immunity?").

[101] *Killian, supra,* at 429 (emphasis added).

[102] *See Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983) ("The law of the case doctrine is closely related to the principle of res judicata. The latter prevents collateral attack on the result of a completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit.").

summary judgment. And thankfully, because there were jury verdict questions that separated out the underlying constitutional violation and qualified immunity, this is not a situation like *Pouillon* where a new trial is needed.[103] This Court need only remand with instructions to the trial court to reform the judgment per the removal of Question 3 of the verdict form.

II.    <u>This Court should reform the judgment because the verdict form included both steps of qualified immunity, even though the parties stipulated in writing that it would not.</u>

It is "a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial."[104] Once "the pretrial order is entered, it controls the scope and course of the trial."[105] The effect of a pretrial order is so great, that a "court may modify the order issued after a final pretrial conference only to prevent manifest injustice."[106]

Here, prior to trial, the parties disagreed about many things, including whether the qualified immunity question had been resolved by the court on summary

---

[103]*Pouillon v. City of Owosso*, 206 F.3d 711, 718-19 (6th Cir. 2000) ("We hold that the district court abused its discretion in submitting to the jury questions of law as well as of fact. For this reason we reverse the district court's denial of Pouillon's motion for special interrogatories and remand this case for a new trial on the three questions which, as we have just indicated, should have been put to the jury.").

[104] *Branch-Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991).

[105] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000); *Excel Modular Scaffold & Leasing Co. v. OSHRC*, 943 F.3d 748, 754 (5th Cir. 2019) ("A pretrial or prehearing order 'controls the course of the trial.'").

[106] *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010).

judgment and appeal. Plaintiffs contended that qualified immunity had already been denied pre-trial, because that is what the Fifth Circuit said: it held that "the district court did not err in denying Burmaster qualified immunity."[107] Defendants disagreed.

But the parties did agree on something: that *if* qualified immunity were still a live issue, it would be for the judge – not the jury – to decide. The parties met and conferred about that, and counsel for all parties signed a joint filing that "the jury shall decide all disputed factual issues other than qualified immunity."[108] This stipulation ultimately became part of the Court's Pre-Trial Order.[109] The parties stipulated to this <u>twice</u> – once in 2023 before the first trial date[110] and once in 2025 before the second trial date.[111]

The Supreme Court has held that "stipulations must be binding."[112] In briefing below, Defendants offered no argument or explanation for why they should not be held to their stipulation. And neither the Defendants nor the trial court pointed to any manifest injustice that would require diverting from the pretrial order that had been negotiated by the parties, jointly filed, and approved by the trial court.

---

[107] *Brown v. Burmaster*, 2025 U.S. App. LEXIS 1129 (5th Cir. Jan. 17, 2025).
[108] ROA.4977.
[109] *See* ROA.5312 (Minutes of Pre-Trial Conference) (referring to "pretrial order").
[110] ROA.1127.
[111] ROA.4977.
[112] *Standard Fire Ins. Co. v. Knowles*, 568 US 588 (2013).

Indeed, the manifest injustice was against the Plaintiffs, whose preparation for and presentation at trial was substantially thrown off course when the trial court decided *mid-trial* that the jury would decide qualified immunity despite the stipulation to the contrary.

This Court should honor that stipulation from the pretrial order and remand with instructions to reform the judgment per the removal of Question 3 of the verdict form.

III. <u>This Court should reform the judgment because the jury found that the "City of New Orleans is liable" – but the trial court nonetheless entered judgment for the City.</u>

An elementary principle of municipal liability under Section 1983 is the requirement of "direct causation."[113] That is to say, "there can be no municipal liability unless it is the moving force behind the constitutional violation."[114] That was explained to the jury here: the trial court instructed the jury that a "city is not liable under federal law for the actions of its employees unless the constitutional violation was cause by a city policy or custom."[115]

---

[113] *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) ("Whatever its form, to yield municipal liability under § 1983, the policy must have been the "moving force" behind the plaintiff's constitutional violation. . . In other words, a plaintiff "must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation."").

[114] *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009); *see also McInnis v. A.M.F., Inc.,* 765 F.2d 240, 248 (1st Cir. 1985) ("Causation in fact is an integral component of a tort claim; without causation there can be no liability.").

[115] ROA.5696.

Here, Plaintiffs proceeded to trial with a *Monell* claim against the City of New Orleans for failing to adequately adopt and implement policies regarding officer training, supervision, and discipline with respect to the use of force on dogs. At trial, the jury found that the "City of New Orleans is liable" by checking "Yes" to the following question:[116]

4. Did the Plaintiffs prove by a preponderance of the evidence that Defendant the City of New Orleans is liable for a violation of their constitutional rights for any of the following reasons: (1) inadequately training, (2) inadequately supervising, or (3) inadequately disciplining Derrick Burmaster with respect to the use of force on dogs?

 Yes _____ No

But even though Section 1983 liability incorporates causation, the trial court asked an additional causation question, to which the jury checked "No":[117]

5. Did the Plaintiffs prove by a preponderance of the evidence that Defendant the City of New Orleans's policies with respect to training, supervision, or discipline of Derrick Burmaster caused the killing of Apollo?

_____ Yes  No

At first glance, there appears to be a tension between these answers. But the United States Constitution, the Supreme Court, and this Court have set out a strong duty to look closely. The Seventh Amendment "fashions [a] federal policy favoring

---

[116] ROA.5645.
[117] *Id.*

jury decisions of disputed fact questions."[118] Therefore, where "there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."[119] It is the "duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them."[120] Courts must "attempt to reconcile the jury's findings, by exegesis if necessary."[121]

Here, there is a way to harmonize the jury's answers. In question 4, the jury found that the City was liable because of the inadequacies of its training, supervision, and discipline. In question 5 the jury found Plaintiffs did not prove that the City's "policies" caused the killing.

Those two answers are reconcilable on an understanding that it was the *absence* of appropriate policies that caused the killing, not the policies that *did exist*. In other words, a fair reading of the jury's answers is as follows: while the City's existing policies did not cause the killing of Apollo, the absence of additional appropriate policies on training, supervision, and discipline did. That reading would be

---

[118] *Carr v. Wal-Mart Stores, Inc.,* 312 F. 3d 667, 672 (5th Cir. 2002).

[119] *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 US 355, 364 (1964). *See also Johnston v. Tidewater Marine Serv.*, No. 96-30595, 1997 U.S. App. LEXIS 42798, at *2 (5th Cir. Apr. 23, 1997) ("We are required under the Seventh Amendment to make a concerted effort to reconcile seemingly inconsistent answers to special interrogatories if possible.").

[120] *Gallick v. B & O R.R.*, 372 U.S. 108, 119, 83 S. Ct. 659, 666 (1963).

[121] *Id.*

consistent with the testimony at trial, including the expert opinion that the key problem with the City's training was what it cut out – not what it left in.[122]

But the trial court did not make any effort to harmonize the jury verdict answers. It simply concluded that the jury did not mean what it said in Question 4 when it found that the City "is liable."[123] But discarding one finding of the jury in favor of another is not an option. Either the findings must be reconciled, or a new trial must be ordered.[124]

Accordingly, this Court should honor the jury's finding that the "City of New Orleans is liable" and remand for entry of judgment in favor of Plaintiffs, or alternatively remand for a new trial.

## CONCLUSION

This Court should reform the judgment below to hold Mr. Burmaster and the City of New Orleans liable for Plaintiffs' constitutional claims. In the alternative, this Court should remand for a limited trial on the City's liability for the constitutional claims.

---

[122] ROA.4263 (Expert Report) (opining that "crucial material was specifically omitted from the presented course material and likely contributed to Burmaster's incorrect perception of Apollo as a threat. Other materials illustrative of positive behavior of dogs is likewise omitted from the offered presentation.").

[123] ROA.5902.

[124] Fed. R. Civ. Proc. Rule 49(b)(4) ("When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.").

Respectfully submitted by,

/s/ *William Most*

William Most (No. 36914)
Hope Phelps (La. Bar No. 37259)
MOST & ASSOCIATES
201 St. Charles Ave, Ste. 2500 #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
williammost@gmail.com

/s/ *Tarak Anada*

Tarak Anada (No. 31598)
Patrick Van Burkleo (No. 41471)
JONES WALKER LLP
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8322
tanada@joneswalker.com

*Counsel For Plaintiffs-Appellants*

42

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that today, December 9, 2025, a copy of the brief for

Appellants was served via electronic filing with the Clerk of Court and all

registered ECF users by using the CM/ECF system.

*/s/William Most*
William Most
*Counsel For Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 28(b) and Fifth Circuit Court of Appeal Local Rule 32.3, undersigned counsel certifies that:

1.     This brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) because it contains 7,625 words on 31 pages, excluding parts of the brief exempted by F.R.A.P. 32(f).

2.     This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in Microsoft Word using 14-point Equity font.

*/s/ William Most*
William Most
*Counsel For Plaintiffs-Appellants*